IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

JOHN L. WEEKS,

          Petitioner,

          vs.                   Case No. 05-3322-JTM

DAVID R. McKUNE, Warden, Lansing
Correctional Facility, and PHILL KLINE,
Kansas Attorney General,

          Respondents.

MEMORANDUM AND ORDER

     Petitioner John L. Weeks, an inmate of Lansing Correctional Facility in Lansing, Kansas seeks a Writ of Habeas Corpus.  Lansing was convicted in Lyon County, Kansas District Court of three counts each of aggravated kidnapping, rape, and criminal sodomy.  He contends that the trial court erred in excluding alibi testimony, that the evidence was insufficient to support a conviction, that his trial counsel was ineffective, and that the prosecutor committed misconduct.

     Weeks was convicted in the Lyon County District Court of three counts of Rape in violation of K.S.A. 21-3502(a)(1), three counts of Aggravated Kidnapping in violation of K.S.A. 21-3421, and three counts of Aggravated Criminal Sodomy in violation of K.S.A. 21-3506(a)(3). (R. IV, 316-22.) August 30, 2000. Petitioner was sentenced by the Lyon County District Court to a controlling term of 1,856 months imprisonment. (R. IV, 316-22; XV, 151.)

     In his direct appeal, Weeks raised his arguments similar to several of those advanced here, including the trial court's exclusion of the alibi testimony, and the supposed insufficiency of the

evidence as to the kidnapping of N.A. and L.A.  Weeks also argued that the trial court erred by instructing the jury that rape is sufficient to constitute the bodily harm element of aggravated kidnapping, erred by failing to sever the charges in the three separate incidents into three separate trials, erred in imposing an upward departure sentence, based on an incorrect calculation of his criminal history and violating *Apprendi v. New Jersey.*

The Kansas Court of Appeals affirmed the convictions, but vacated the portion of Weeks' sentence that represented an upward departure from the sentencing guidelines. *State v. Weeks*, No. 86,264 (Kan.Ct.App., June 7, 2002) (Unpublished).  The Kansas Supreme Court denied review on December 4, 2002.

On February 20, 2003, Weeks was re-sentenced by the Lyon County District Court to a controlling term of 534 months in prison. (R. IV, 378-84.)

Weeks filed a petition for Habeas Corpus pursuant to K.S.A. 60-1507 in the District Court of Lyon County, Kansas, alleging that he was denied his right to effective assistance of counsel and that his trial was rendered fundamentally unfair by prosecutorial misconduct. (R. I (Case No. 03-C-29), 3-26.)  The Lyon County District Court denied petitioner's K.S.A. 60-1507 petition. (R. I (Case No. 03-C-29), 63-64.)  Weeks appealed, but the Kansas Court of Appeals affirmed the denial of K.S.A. 60-1507 petition. *Weeks v. State*, No. 91,513, 2005 WL 124167 (Kan.Ct.App., January 21, 2005) (Unpublished).  The Kansas Supreme Court denied review on June 5, 2005.

The charges in petitioner's case arose from three separate incidents in or near Emporia in Lyon County, Kansas. The first occurred in the early morning hours of July 24, 1999, when sixteen-year-old K.M. was abducted from the courtyard of the apartment building where she lived. (R. IX, 312-19.) She had returned home from a late-night party and was locked out. (R. IX, 313-14.)

2

She was approached by a man who grabbed her and forced her into a car. (R. IX, 316-20.) The man drove her to a remote area and forced her to engage in both oral and vaginal sex. (R. IX, 321-27.) When this was over, the man let her go. (R. IX, 328-29.) She eventually walked to a home and awoke the resident who allowed her to call her father and then took her home. (R. IX, 330-31.) K.M. was taken to the hospital where a rape examination was performed, (R. IX, 331-32; X, 475.) and the police were notified. (R. X, 533.)

The second incident occurred during the early morning hours of November 4, 1999. N.A. left a bar just outside Emporia and began walking home. (R. IX, 362-63.) A man in a car drove near her and asked her if she needed a ride. (R. IX, 363.)  N.A. recognized the man as a customer at the nightclub where she worked as a dancer. (R. IX, 363-64.) N.A. got into the man's car. (R. IX, 365.) However, rather than taking her home, the man drove N.A. to a remote area and raped her in the same fashion as K.M. (R. IX, 366-70.) After the rape, the man dropped her off near Emporia State University.  (R. IX, 373.) N.A. subsequently went to the hospital where a rape examination was performed and the police were notified. (R. IX, 374-75.) The rapist had told N.A. that his name was Kelly Davis (R. IX, 366.), and when he dropped her off, he gave her a piece of paper with that name and a phone number on it. (R. IX, 373.)

The police investigation determined that there was a man named Kelly Davis who worked as a jailer at the Lyon County Jail. (R. IX, 417.) However, DNA testing proved that Mr. Davis was not the rapist. (R. IX, 417.)

The third incident occurred on the early morning of November 12, 1999. At that time, petitioner knocked on the door and entered the apartment of L.A. (R. IX, 430.) L.A. knew petitioner as a co-worker of her neighbor, Victor White. (R. IX, 426-27.) Petitioner told L.A. that Victor was

3

drunk and needed help. (R. IX, 430.) L.A. accompanied petitioner down the apartment stairs to help

Victor. (R. IX, 431.) However, when they reached the bottom of the stairs, petitioner told L.A. that

Victor was actually at a bar and he told her he needed her to go with him to the bar to get Victor. (R.

IX, 431-32.) L.A. got in petitioner's car, but instead of taking her to the bar where Victor supposedly

was, he drove her to a remote area. (R. IX, 433-34.) Once there he began kissing her and when she

resisted, he slapped her. (R. IX, 435.) Petitioner forced L.A. to perform oral and vaginal sex. (R. IX,

435-39.) When he was finished, petitioner took L.A. back to her apartment. (R. IX, 440.) L.A.'s

friends subsequently took her to the hospital and called the police. (R. X, 442.) L.A.'s boyfriend

talked to Victor White and learned petitioner's name, which he reported to police. (R. XII, 900- 901.)

The police arrested petitioner. (R. XII, 901.) The police then recalled K.M. and N.A. and

provided them with a photo lineup that included petitioner's photo. Both selected petitioner as

closely resembling their attacker. (R. XI, 782, 785, 865.) Analysis of biological evidence collected

from all three rape victims linked petitioner to the crimes. (R. XI, 672-79.)

**Conclusions of Law**

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), 28 U.S.C. §

2254(d)(1) circumscribes a federal habeas court's review of a state court decision.  The AEDPA

"places a new constraint on the power of a federal habeas court to grant [petitioner's] application for

a writ of habeas corpus." *Williams v. Taylor*, 529 U.S. 362, 412, 120 S.Ct. 1495, 1523, 146 L.Ed.2d

389 (2000); *see also Lockyer v. Andrade*, 538 U.S. 63, 123 S.Ct. 1166, 155 L.Ed.2d 144 (2003).

Under the AEDPA, a petitioner is entitled to habeas relief only if he can establish that the state court

decision was "contrary to, or involved an unreasonable application of, clearly established Federal

law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or an "unreasonable determination of the facts in light of the evidence presented." 28 U.S.C. § 2254(d)(2). Absent clear and convincing evidence to the contrary, this court must presume that the state courts' factual findings are correct. 28 U.S.C. § 2254(e)(1). *See Miller-El v. Cockrell*, 537 U.S. 322, 341, 123 S.Ct. 1029, 154 L.Ed.2d 931 (2003) (sections (d)(2) and (e)(1) act independently of one another).

A state court decision is "contrary to" clearly-established precedent if the state court adopts a rule which "contradicts the governing law" in the case law of the United States Supreme Court, or reaches a different result in a case involving "a set of facts that are materially indistinguishable from a decision of th[e Supreme] Court." *Williams*, 529 U.S. at 405-406; *Bell v. Cone*, 535 U.S. 685, 694, 122 S.Ct. 1843, 152 L.Ed.2d 914 (2002). A federal court reviewing a petition for habeas relief should ask whether the state court's application of clearly established federal law was objectively unreasonable. *Id.* at 409. Even if the federal habeas court concludes in its independent review that the state court decision applied clearly established federal law incorrectly, relief is appropriate only if the application is also objectively unreasonable. *Id.* at 411; *Penry v. Johnson*, 532 U.S. 782, 121 S.Ct. 1910, 1918, 150 L.Ed.2d 9 (2001) (reiterating "objectively unreasonable" standard set forth in *Williams v. Taylor*).

## 1.  Alibi Testimony

Before the trial, the defense gave notice of alibi for Angie Lawrence to give testimony as to the K.M. attack on July 24, 1999 , but not for the incident involving N.A on November 4, 1999.

5

During Lawrence's testimony, defense counsel indicated that he would like to elicit evidence that Weeks was at home at 1:30 a.m. on November 4, 1999.

K.S.A. 22-3218 requires a criminal defendant to give at least seven days prior notice to the prosecution of the defense's intent to present alibi evidence. Failure to give such prior notice results in the exclusion of such evidence. K.S.A. 22-3218(4). However, for good cause, a trial court may allow late notice. K.S.A. 22-3218(2).

Counsel contended that the evidence would not be alibi evidence, because N.A. did not testify that the attack occurred at any exact time, only that it happened around 1:00 a.m., but could have occurred after she left the bar "either side of midnight." (R. III. at 79). The trial court concluded the proposed testimony was alibi evidence and excluded it. This decision was affirmed by the Kansas Court of Appeals. *State v. Weeks*, No. 86,264, Slip op. at 6-8 (Kan.Ct.App., June 7, 2002) (Unpublished Opinion).

This court finds no violation of Weeks' due process rights. The clear import of the proposed testimony was to show that Weeks was elsewhere at the time of the assault on N.A. Weeks correctly notes that a criminal defendant has due process right to present exculpatory evidence, but this right is not unlimited, and may be subjected to reasonable restrictions. *See United States v. Scheffer*, 523 U.S. 303, 308, 118 S.Ct. 1261, 140 L.Ed.2d 413 (1998). A defendant does not possess "an unfettered right to offer [evidence] that is incompetent, privileged, or otherwise inadmissible under standard rules of evidence." *Montana v. Egelhoff*, 518 U.S. 37, 42, 116 S.Ct. 2013, 135 L.Ed.2d 361 (1996). The Constitution affords trial judges "wide latitude" to exclude evidence that is repetitive, marginally relevant, poses an undue risk of harassment, prejudice, or confusion, or is otherwise excluded through the application of the evidentiary rules. *Crane v. Kentucky*, 476 U.S. 683, 689-90,

106 S.Ct. 2142, 90 L.Ed.2d 636 (1986). A habeas petitioner asserting a constitutional violation resulting from a state court decision to exclude evidence bears a heavy burden to demonstrate a due process violation. *Id.* at 43.

Weeks has made no such showing here.  In *Williams v. Florida*, 399 U.S. 78, 90 S.Ct. 1893, 26 L.Ed.2d 446 (1970), the Supreme Court upheld the constitutionality of "notice-of-alibi" statutes — such as K.S.A. 22-3218 — stating that "[g]iven the ease with which an alibi can be fabricated, the State's interest in protecting itself against an eleventh-hour defense is both obvious and legitimate." 399 U.S. at 81. The enforcement of such statutes does not violate due process. *Id*. at 82. *See also Wardius v. Oregon*, 412 U.S. 470, 472, 93 S.Ct. 2208, 37 L.Ed.2d 82 (1973) ("notice-of-alibi" rules do not violate due process so long as the defendant is afforded reciprocal discovery).  The Tenth Circuit has upheld the constitutionality of the Kansas predecessor to the current Kansas "notice-of-alibi" statute, K.S.A. 62-1341,1 in *Rider v. Crouse*, 357 F.2d 317 (10th Cir. 1966). The court found that the statute "does not deny an accused the right to such a defense but merely prescribes notice as a prerequisite thereto." *Id*. at 318. The court found no constitutional violation arising from the state court's exclusion of alibi evidence for failure to comply with the statute's notice provisions. *Id.*

Weeks has failed to show that the trial court's decision to exclude the proffered evidence violated his due process right to present a defense. The statute itself is constitutional, and the trial court's application of the statute was found by the Kansas Court of Appeals to be correct under state law. Federal habeas relief is not warranted on this claim.

**2. Aggravated Kidnapping**

Weeks argues that the elements required for aggravated kidnapping of N.A. and L.A. under Kansas law were not established at the trial.  In determining whether the evidence is sufficient to support a criminal conviction, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *Torres v. Mullin*, 317 F.3d 1145, 1151 (10th Cir. 2003). Where a habeas petitioner does not contend that the factual findings of the state courts are erroneous, but instead argues that the state court erroneously held that those facts were sufficient to support her conviction, the question presented is one of law rather than fact, and is governed by 28 U.S.C. § 2254(d)(1). *Torres*, 317 F.3d at 1151-52.  The court must determine — applying state law regarding the substantive elements of the offense — whether the state courts' decisions were contrary to, or involved an unreasonable application of, *Jackson. Id.* at 1152.

Aggravated kidnapping under Kansas law is the taking or confining of a person, accomplished by force, threat, or deception, undertaken to facilitate flight or the commission of any crime, and which results in infliction of bodily harm on the victim.  K.S.A. 21-3420(c) (1995); K.S.A. 21-3421 (1995).

In his original petition, Weeks' argument was that the state failed to provide evidence showing that either N.A. or L.A. were forced into his car.  The state has responded by observing correctly that physical force or violence is not required by the Kansas statutes; it is sufficient if the taking or confining is accomplished by deception.

There was ample evidence of deception.  Weeks lured N.A. into his car with a false name and the false promise to give her a ride home.  He did not take her home, but took her to a remote area where he raped her.  He lured L.A. into his car with the false story that he needed her help getting her drunk neighbor home. (R. IX, 430-32.)

Following the state's response, Weeks in his Traverse presents a new argument:  that the confinement in the car did not rise to the level of a kidnapping, citing *State v. Cabral*, 228 Kan. 741, 619 P.2d 1163 (1980).  Weeks' reliance on *Cabral* is misplaced.  In *Cabral*, the Kansas Supreme Court held that the mere fact the defendant had raped his victim in an automobile did not support the additional charge of kidnapping.  The court twice stressed that the victim's presence in the car was not forced or the product of deception, but was consensual, that "the defendant and his victim had been together all evening, driving around Hutchinson and stopping at various places by mutual consent." 228 Kan. at 743-744, 744.  The court also stressed that the victim had consented to stops at various locations, including a park similar to the scene of the eventual rape.  Here, in contrast, Weeks lured his victims by various deceptions into his vehicle, so that he could transport the victims to remote locations to more easily accomplish the crime of rape in a manner which would "substantially lessen[] the risk of detection."  *See State v. Buggs*, 219 Kan. 203, 547 P.2d 720 (1976).

The court finds that Weeks has failed to show any deprivation of his constitutional rights in the convictions for aggravated kidnapping.

**3. Assistance of Counsel.**

Weeks alleges that his constitutional rights were violated because his trial counsel was ineffective. Specifically, he alleges that his trial counsel failed to meet the constitutionally-required

minimum of effectiveness in:  failing to file a notice of alibi required by KSA 22-3218, failing to filed motions of suppression (of a suggestive pre-indictment identification, of STR DNA results, and an identification card of Weeks), failing to object to leading questions, failing to comply with discovery rules thereby leading to the exclusion of demonstrative evidence,  failing to conduct redirect examination, and failing to object to the prosecutor's references to Weeks as a rapist in his closing argument

To establish an entitlement to relief on a claim of ineffective assistance of counsel, a petitioner must demonstrate both that his counsel's performance fell below an objective standard of reasonableness, and that the deficient performance prejudiced him by altering the result of the trial. *Strickland v. Washington*, 466 U.S. 668, 687-88, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).  In determining the effectiveness of counsel, the court must accord "a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance; that is, . . . that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* at 689.  Further, the AEDPA requires that state adjudications of ineffectiveness claims are entitled to deference; the court can grant habeas relief "only if the state court determination on the issue involved an 'unreasonable application' of clearly established federal law as established by the Supreme Court." *Spreitzer v. Peters*, 114 F.3d 1435, 1453 (7th Cir. 1997); *Trice v. Ward*, 196 F.3d 1151, 1160 (10th Cir.1999).

Weeks first complains that trial counsel failed to provide notice of alibi testimony under KSA 22-3218.  The Kansas Court of Appeals, in rejecting Weeks' claim of ineffective assistance of counsel on this issue, noted that the relevance of alibi testimony changed with the testimony of the victim:

10

> At trial, N.A.'s testimony placed the time frame for the rape as after 1 a.m. but before 3:39 a.m. However, at preliminary hearing, N.A.'s recollection of the time she left the bar, prior to being picked up by her assailant, was tentative and imprecise. At one point, she even agreed that she could have left either before or after midnight. In other words, based upon the victim's preliminary hearing testimony, Angela's value as an alibi witness was nebulous, at best.

> Apparently, Weeks believes that his trial counsel should have foreseen that the victim's testimony would change at trial. We do not believe prescience is a required attribute of an effective criminal defense attorney. We also do not believe that a defense attorney would always be well served by filing a prophylactic alibi notice, when unconvinced by the victim's sworn testimony that an effective alibi exists.

2005 WL 124167, at *2. The court refused to find that trial counsel was ineffective in giving notice of alibi testimony, given the unanticipated change in the victim's sworn testimony as to when the assault occurred. The petitioner only generally repeats his arguments relating to the importance of alibi testimony, and makes no attempt to respond to the conclusion of the Kansas Court of Appeals. The court finds that trial counsel was not constitutionally ineffective in failing to give notice of alibi testimony prior to trial in light of the existing state of the evidence.

Even if the court were to find counsel deficient in this respect, the court finds that the petitioner has failed to show that not gaining the introduction of such alibi testimony was unfairly prejudicial. Counsel did give notice, and gained the admission, of the alibi testimony of Angie Lawrence as to the attack on K.M.; the jury rejected it. At trial, N.A. positively identified Weeks as her rapist, and the DNA evidence confirmed the identification. There is no reason to believe that had Lawrence provided similar alibi testimony as to the assault on N.A., the jury would not have similarly rejected the alibi testimony in light of the eyewitness and DNA evidence.

Weeks next argues that counsel should have moved to suppress evidence relating to the photo lineup and the DNA evidence. It is apparent, however, that the absence of such motions were not

11

the product of neglect but a considered tactical decision by counsel.  Weeks' trial attorneys believed that there was virtually no chance of actually suppressing the evidence, and that any hearing on such a motion would only give the prosecution witnesses an opportunity to go through a dry run of their trial testimony, and identify weaknesses that could be shored up before trial. (October 8, 2003 Hrg. Tr. at 11-12, 24, 39-40.)  Rather, counsel determined that the better approach would be to attack the identification by cross-examination at trial.

Weeks also argues that counsel should have sought suppression of an employee identification card seized from him when he was arrested.  The card was later used in a photo lineup.  The card was seized at the time of Weeks' arrest, and Weeks has failed to show either that a suppression motion would have been successful (the Kansas Court of Appeals noted in its opinion that "Weeks acknowledges that law enforcement officials are permitted to seize and retain personal effects after an arrest," 2005 WL 124167 at *6), or that it created any reasonable possibility of a different result at trial.

Similarly, with respect to the DNA testing and chain of custody questions, Weeks has failed to demonstrate that the DNA testing itself, or the minor chain-of-custody arguments he raises, would in fact have led to the suppression of the results of the DNA testing.  Again, trial counsel believed such motions as to the DNA tests themselves would not succeed.  And, as the Kansas Court of Appeals stressed in rejecting Weeks' argument, any deficiency in the chain of custody of evidence goes to the weight rather than the admissibility of evidence.  2005 WL 124167 at *5, *citing State v. McGhee*, 226 Kan. 698, 703, 602 P.2d 1339 (1979).  The petitioner has not demonstrated trial counsel was ineffective in failing to advance his various theories regarding potential tampering with the chain of custody of the DNA evidence, which would not under Kansas law have led to

12

suppression of the evidence.  Rather, trial counsel committed themselves to attacking the results of the DNA testing at trial, which a review of the trial testimony demonstrates they did at length and with extensive knowledge of the subject.  The fact that it was ultimately unsuccessful does not demonstrate that counsel was constitutionally deficient.  Weeks has failed to overcome the presumption that counsel's actions were legitimate trial tactical decisions.

Next, Weeks argues that counsel was constitutionally deficient in failing to object to certain leading questions.  However, the leading questions identified by Weeks in his petition are so small in number and limited in scope (they were asked of Weeks' hostile alibi witness Lawrence – see Traverse at 15) that the court finds no basis for concluding that counsel's failing to object to questions was either deficient in itself, or prejudicial in light of all of the evidence supporting a guilty verdict.

Weeks complains that counsel failed to meet a discovery deadline and so failed to gain permission to use demonstrative videotape evidence on the subject of DNA testing.  At the time of trial, Weeks' counsel had recently obtained permission to use the tape in another, unrelated case, and sought permission to use it in the case against Weeks.  The Kansas Court of Appeals, without reaching the question of whether counsel's performance was deficient, found that there was no prejudice in failing to gain the use of the videotape, since the information in the videotape was in any event introduced through the testimony of the defense expert, Dr. Stetler —  "The jury got the information it needed in order to embrace the theory of the defense as to the DNA evidence; it just did not get the pictures to accompany the explanation." 2005 WL 124167 at *5.  This court agrees, and finds no basis for concluding that the failure to gain the use of the videotape was in some manner unfairly prejudicial to the petitioner.

13

Next, Weeks argues that counsel was deficient in failing to conduct a redirect examination of himself.  However, Weeks fails to demonstrate specifically what further testimony would have accomplished.  The decision of whether to engage in redirect examination — as Weeks would have it, "to clarify the facts" (Traverse at 14) — is a paradigmatically tactical decision, one which should not be subject to casual second-guessing.  *See Boyd v. Ward*, 179 F.3d 904, 915 (10th Cir. 1999). The desire to gain "clarifying" testimony must be balanced against the fact that such redirect examination will necessarily provide the opportunity for further re-cross examination by the prosecution.  Further, counsel for the defense were actually present at the trial, and were able to directly observe the credibility and demeanor of the petitioner's testimony.  Additional redirect examination bears the risk of digging a deeper hole.  Weeks has failed to show that the areas of clarification or rehabilitation he believes his counsel should have addressed on redirect examination were so important that the failure to present it rises to the level of constitutional ineffective assistance of counsel.

Weeks also objects to his counsel's failure to object and seek corrective instructions during the re-cross examination of Angie Lawrence.  But counsel's decisions about when to object, when not to object, and whether to seek corrective instructions or not, are also classic matters of trial strategy.  Weeks fails to present any evidence or argument which would overcome the presumption that his attorneys rendered objectively reasonable assistance. *See Strickland*, 466 U.S. at 689-90.

Finally, Weeks contends that counsel was deficient in failing to object to the prosecutor's reference to him as a rapist during closing argument.  During the closing, the prosecutor stated: "This defendant, this rapist, what he did was he took her to a remote location."

14

The court finds no basis for concluding that counsel was constitutionally ineffective in failing to object to the prosecutor's comment for the same reason that the court rejects the additional argument advanced by Weeks (that the prosecutor's remark was improper and violated his right to a fair trial): the remark was a fair comment on the evidence. Certainly, prosecutors are obliged to avoid unfairly vituperative or prejudicial personal characterizations of the defendant. *State v. Finley*, 268 Kan. 557, 570, 998 P.2d 95 (2000). But it must be remembered that Weeks was charged *with rape*. Three eyewitness victims testified that Weeks *raped* them. DNA evidence corroborated the allegations of *rape*. That the prosecutor referred at one point to Weeks as a "rapist" was a fair summation of the evidence and did not deprive Weeks of a fair trial.[1]

Weeks has failed to demonstrate the existence of any constitutional errors in the state court proceedings. The state proceedings did not produce a result contrary to or reflect an unreasonable application of clearly established federal law; those proceedings did not involve any unreasonable determination of the facts in light of the evidence presented. Weeks has failed to demonstrate grounds sufficient for relief under 28 U.S.C. § 2254.

Also before the court is petitioner's Motion for Evidentiary Hearing and for Appointment of Counsel. The court denies petitioner's motion. The court has been presented with the state records — both those of the original criminal trial and the subsequent hearing conducted pursuant to KSA

---

[1]The present case is distinguished from *State v. Zamora*, 247 Kan. 684, 689, 691, 803 P.2d 568 (1990), where the court reversed defendant's rape conviction in light of prosecutor's comment that "He has raped this victim once. If he is found not guilty, he will get away with it again." The court's discussion makes clear that misconduct existed not in characterizing the defendant in a kidnapping and rape case as having "raped this victim," but in making a prediction of future lawlessness. 247 Kan. at 691-92 (noting violations of MRPC Rule 3.4(e), Kan. Sup. Ct. R. 266 (1990) and 1 ABA Stand. for Crim. Just., The Prosecution Function, 3.90). Here, the prosecution made no such improper argument.

60-1507 — which provide a full basis for reaching the appropriate and correct conclusions of the issues raised here without the need for an evidentiary hearing.   Further, the court finds that appointment of counsel is unnecessary.   Weeks has presented his case cogently and thoughtfully, albeit unsuccessfully.   Appointment of counsel would not advance the interests of justice.

IT IS ACCORDINGLY ORDERED this 17th day of May, 2006, that the Petition for Writ of Habeas Corpus (Dkt. No. 1) is denied;   Petitioner's Motion for Evidentiary Hearing and for Appointment of Counsel (Dkt. No. 24) is also denied.

s/ J. Thomas Marten
J. THOMAS MARTEN, JUDGE